IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THEODORE J. WILLIAMS      )
                          )
          Plaintiff,      )
                          )
     v.                   )    1:04CV00342
                          )
JAMIE POPE,               )
                          )
          Defendant.      )

## ORDER AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

This case comes before the Court on defendant's rebriefed motion for summary judgment. Defendant filed his motion earlier, but the Court found his briefs in support of the motion to be inadequate for reasons set out in an Order filed on May 4, 2005. It, therefore, struck the supporting briefs without prejudice to defendant rebriefing the motion. Defendant has now filed a renewed motion for summary judgment.[1]

### Facts

The following facts are the essential facts of the case as set out by plaintiff to the extent that he has supported them with an affidavit or other evidence. Plaintiff's recitation of the facts is set out mainly in his declaration in opposition to the original motion for summary judgment and the attached exhibits[2]. He states

---

[1]Because of the renewed motion for summary judgment, the original motion is moot and will be denied.

[2]Plaintiff has filed his own affidavit opposing the rebriefed motion. However, it is mainly argument. To the extent that it is not, it either repeats alleged facts already in the record or addresses irrelevant matters. Of particular note, he continually criticizes defendant's various versions of events
(continued...)

that on November 17, 2003 he was a passenger in a pickup truck driven by Monica Adkins and owned by her boyfriend Buck Manuel, who was also in the truck. (Pl. Decl. ¶ 4) Plaintiff claims that the truck was not running properly and that he and his friends became afraid that it was about to break down. Therefore, they exited the highway into the town of Albemarle in order to call Manuel's mother to see if his brother could come to help them. (Id. ¶¶ 5-6)

Plaintiff states that they parked the truck in a lighted area in front of a Food Lion store in the Eastgate Shopping Center, where a pay telephone was located. Manuel exited the truck and began attempting, unsuccessfully, to contact his mother. (Id. ¶¶ 7-8) At this point, defendant, an Albemarle police officer, entered the parking lot of the shopping center in his patrol car and drove slowly by the group, looking intently at them. (Id. ¶ 9) He continued past the truck to another store, turned around, and dimmed his lights. Plaintiff states that as Manuel continued to attempt to call his mother, plaintiff noticed four drink machines to the left of the truck. (Id. ¶¶ 10-11) He claims that none of the "machine[s] appeared tampered with, nor were any hasps open on any of these machines." (Id. ¶ 12) Eventually, Manuel gave up on contacting his mother and returned to the truck. The trio decided

---

[2](...continued)
as being inconsistent or even contradicting other statements defendant has made. Admittedly, a number of plaintiff's criticisms in this regard appear valid. However, they also do not affect the Court's summary judgment decision because the Court is deciding the motion using only plaintiff's evidence, except where it is supplemented by uncontradicted evidence from defendant or his witnesses. The inconsistencies in defendant's statements would come into play only if the Court were deciding credibility issues or picking between two sets of contested facts. It is not.

to attempt to drive the ailing truck to their intended destination and, so, proceeded to return to the highway. (Id. ¶ 14)

Plaintiff claims that defendant immediately left the parking lot following the truck and that he stopped the truck about a quarter of a mile from the parking lot. (Id. ¶¶ 15-16) As defendant approached the truck and asked for Adkins' license, two other officers arrived. The officers then removed Adkins, Manuel, and plaintiff from the truck, frisked them, and began searching the truck. (Id. ¶¶ 16-17) The officers asked about weapons, drugs, and alcohol, but found none during the search. When defendant then used a radio to request that other officers look at area buildings for possible burglaries, plaintiff became angry and began telling the officers that their actions were illegal and that he would sue them. (Id. ¶ 19) Later, when defendant asked other officers to check drink machines and newspaper racks in the area, plaintiff cursed him and told him "how sorry and pathetic he was." (Id. ¶ 20)

Around that time, one of the officers found a set of bolt cutters behind the seat of the truck. Plaintiff claims that defendant took the cutters and drove back to the Food Lion parking lot before stating that the padlocks from the drink machines were missing. (Id. ¶¶ 19-20) In the meantime, one of the other officers found and seized Adkins' purse, which contained $142.88 in loose change. (Id. ¶¶ 21-22) The officers then arrested plaintiff and his two friends, allegedly "'because you guys cut the padlocks off the drink machines at Food Lion and robbed them.'" (Id. ¶ 23)

-3-

Plaintiff and his friends were transported to the police station and removed from the police cars. Plaintiff claims that defendant then told another officer to search the patrol car where plaintiff had been because he thought plaintiff had drugs. The officer left and returned a short time later with a small bag of marijuana and some rolling papers. (Id. ¶ 25) Plaintiff continued to tell the officers that they were acting illegally and that he would sue them. He used "a few choice and vulgar words" in doing so. (Id. ¶ 26) "During [plaintiff's] little speech, affiant J.P. Broadway arrived, and upon hearing [plaintiff], stated he was gonna see about charging [plaintiff] with a felony seeing as how [plaintiff] was so smart." (Id. ¶ 27) Plaintiff was then arrested on warrants issued by a magistrate for felonious possession of burglary tools, four counts of breaking into drink machines at Food Lion with the intent to steal money, four counts of breaking into and actually stealing money from drink machines at Food Lion, and possession of marijuana. He was later indicted on those charges. (Id. Exs. D-G, N)

In addition to his own declaration, plaintiff also submitted the affidavit of John Morgan, a manager from the Food Lion in the Eastgate Shopping Center. He states that the Food Lion did not file a police report or talk to the police about the machines being broken into on November 17, 2003. He also states that, to his knowledge, "the drink machines at the Eastgate Foodlion [sic] [were] not broken into on November 17, 2003, and no money was taken from the machines on that date." (Id. Ex. A Morgan Aff.) He says

-4-

that his affidavit is consistent with testimony he gave at a January 5, 2004 hearing in the Stanly County Superior Court.

Defendant has submitted his own affidavit, a supplement to that affidavit, a second supplement to that affidavit and the affidavits of three of his fellow officers. He has also submitted the testimony given by Morgan in a state court hearing. While all of the affidavits paint a somewhat different picture of events, they will not, for the most part, be discussed to the extent that they contradict plaintiff's version of the facts. Instead, they are useful mainly for filling in certain details left out by the plaintiff.

Defendant states that on November 17, 2003, at around 3:00 A.M., he went to the Eastgate/Food Lion shopping center to buy a newspaper. Finding that the paper had not yet been delivered, he left for about ten minutes and then returned. (Def. Aff. ¶¶ 1-2) Upon his return, he saw a white pickup truck parked in a fire lane near drink machines at the Food Lion. (Id. ¶¶ 3-4) Defendant also noticed that the hasps on the locks of the drink machines were open so that he believed they had been tampered with. He states that the hasps had not been open ten minutes earlier. (Id. ¶ 5)

Defendant agrees that he then pulled the truck over shortly after it left the shopping center. (Id. ¶¶ 6-7) Soon after, he was notified by radio that the truck's tag was fictitious. He claims that Adkins told him that she did not know who owned the truck. (Id. ¶¶ 8-11)

At this point, Officers Clark and Valentine arrived and helped defendant handcuff all three occupants in the truck. Another officer, Officer Swink, checked several businesses in the area and found that coin-operated machines at Food Lion North, Coy's Laundry Mat, Ingles, and Wal-Mart had all been tampered with. Defendant originally stated that plaintiff and his friends were arrested at that point. (Id. ¶¶ 12-14) However, he now agrees with plaintiff that they were not actually arrested until after the truck was searched and the bolt cutters and purse full of change were found. (Def. 2nd Supp. Aff. ¶ 6) He also adds that a black nylon bag of hand tools was found in the truck, that plaintiff was found to possess a homemade key which he had attached to his waist by a wire, and that only 3¢ of the $142.88 in the purse was pennies. (Def. Aff. ¶¶ 15-16, Def. Supp. Aff. ¶ 5) The purse was located under the spare tire in the bed of the truck. (Valentine Aff. ¶ 4) Defendant states that he "probably" closed the hasps on the machines before leaving the Food Lion for the night (Def. 2nd Supp. Aff. ¶ 10)

Adkins later confessed, in a written statement given to Officer J.P. Broadway, that she drove while Manuel and plaintiff used plaintiff's homemade key to break into various vending machines.[3] (Def. Aff. ¶ 17 and Ex. A) She makes no statement in her confession regarding whether or not they had broken into or

---

[3] In response to the rebriefed summary judgment motion plaintiff has filed an affidavit from Manuel's mother which calls part of Adkins' confession into question. However, it does not call into question the part stating that plaintiff and Manuel broke into coin operated machines while she drove on the night in question.

were attempting to break into the drink machines at the Eastgate Food Lion when defendant first observed them. Nor does she say whether the hasps on those machines were open or closed when defendant arrived.

In order to address John Morgan's claim that the Eastgate Food Lion drink machines were not broken into on November 17, 2003, defendant submitted transcripts of Morgan's state court testimony. It does not contradict the statements he made in his affidavit that was submitted by plaintiff. However, what the testimony really demonstrates is that he had little or no knowledge of the situation at all. He was not even sure whether or not his assistants had talked to police. (Def. Renewed Brf. Ex. A) Therefore, while his statement that he was not aware of a theft or attempted theft from the machines is true, there also appears to be no reason he would have known of such an attempt. This is particularly true since it appears no money was actually taken from the machines because the theft was interrupted and, therefore, no police officer ever had occasion to talk to him.

### **Plaintiff's Claims**

As set out in the prior order, plaintiff has raised claims that his rights were violated when defendant "(1) illegally stopped the vehicle in which he was riding, (2) illegally searched him, (3) illegally seized (arrested) him, and (4) illegally seized $142.88 of his money." (Id. p. 7) He seeks $1.1 million in damages plus declaratory relief. Defendant asks for summary judgment on the

theory that he is entitled to qualified immunity as to all of these claims.

## **Legal Standards**

When confronted with a motion for summary judgment by defendants, a plaintiff must make a sufficient showing with respect to each essential element of his case for which he bears a burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He may not rely on mere allegations in his pleadings or conclusory statements, but must set forth specific facts. World-Wide Rights Ltd. Partnership v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992); Kipps v. Ewell, 538 F.2d 564 (4th Cir. 1976). His response must be specific and based on more than mere allegations of error or the falsity of defendants' affidavits. Bloodgood v. Garraghty, 783 F.2d 470 (4th Cir. 1986). Plaintiff must show that there are issues of genuine material facts and he must produce evidence to support his contentions.[4] A mere scintilla of evidence is not sufficient. Rather, there must be enough evidence for a jury to render a verdict in his favor. A few

---

[4] The concept, which requires parties to support contentions with evidence, is particularly vital in the present case. Plaintiff has presented affidavits or declarations that support some of his arguments. However, he has also submitted two documents entitled "Plaintiff's Statement of Disputed Facts" and "Plaintiff's Second Statement of Disputed Facts." These documents consist of lengthy lists of points that plaintiff apparently wishes to dispute. However, they are unsworn and are not evidence in the case. Nor, in most instances, are they supported by evidence in the case. Many of them are not even mentioned in plaintiff's evidence, but are merely denials of something set out in defendant's evidence or briefs. It is important that plaintiff understand that a fact is not disputed merely because he says it is, but because there is admissible evidence placed in the record which creates a dispute.

isolated disputed facts are not sufficient. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479 (4th Cir. 1989).

As mentioned earlier, defendant claims that he is entitled to qualified immunity on all of plaintiff's claims. When performing duties within the scope of their employment, government officials (including police officers) are immune from suit unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff's rights are evaluated according to the circumstances present at the time of the incident in question. Anderson v. Creighton, 483 U.S. 635, 639-41, 107 S.Ct. 3034, 3038-3040, 97 L.Ed.2d 523 (1987). The Fourth Circuit has noted that with Fourth Amendment cases, it often can be difficult to discern whether a particular combination of actions violates a plaintiff's rights because that area of the law develops incrementally and constantly continues to develop. Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir. 1987). If there is a legitimate question as to whether defendant's actions objectively violated plaintiff's rights, defendant is entitled to qualified immunity. Id.

## Discussion

The first claim raised by plaintiff is that the vehicle he was riding in was illegally stopped. The proper standard for assessing such stops is whether defendant had "reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740

(2002)(quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The Court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." <u>Id</u>. (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

Here, defendant had a number of reasons to form a "reasonable suspicion" that plaintiff and his companions had broken the law. First, he actually witnessed the truck parked in a fire lane. Under North Carolina law, "[n]o person shall park a vehicle or permit it to stand, whether attended or unattended, upon any public vehicular area . . . designated as a fire lane. This prohibition includes designated fire lanes in shopping center or mall parking lots and all other public vehicular areas." N. C. Gen. Stat. § 20-162(b). The parking of the truck in the fire lane was alone enough for defendant to take action and stop the vehicle. However, there is much more. Not only was the truck illegally parked, but it was illegally parked in the middle of the night near drink machines that had been broken into many times in the past. (Def. Sec. Supp. Aff. ¶ 2) More importantly, defendant saw that the hasps on the machines were open.[5] Defendant had seen the machines just ten

---

[5]Plaintiff did state in his affidavit that the machines had not been tampered with and that the hasps were not open when the truck was parked near them. However, this does not create a genuine issue of material fact. Pictures introduced by both parties show that the hasps are fairly small and dark and that they do not stand out particularly well against the background of the machines whether they are open or closed. (Def. Sec. Supp. Aff. Ex. A., Pl. Aff. Ex. F.) Both parties were viewing the hasps at night from vehicles which were some distance from the machines. Also, plaintiff had no reason to pay close attention
(continued...)

minutes before and noted that the hasps on the machines were not open.

Taking all of the circumstances together, any officer in defendant's place would have had a "particularized and objective" basis for suspecting that plaintiff and his companions might be involved in breaking into or planning to break into the drink machines. Defendant was, therefore, justified in stopping the vehicle after it left the parking lot. Moreover, at or about the time of the stop, defendant learned that the truck had a fictitious license tag. This provides further basis for a more cautious and lengthy detention. Particularly in a qualified immunity context, no officer in defendant's shoes would have known that stopping and detaining the truck and its occupants would clearly violate plaintiff's rights in any way.

Plaintiff next complains about defendant's search of the truck in which he was riding. Unfortunately for plaintiff, he has no standing to contest the search of the truck. The Fourth Amendment protections against improper searches and seizures "'are personal rights which, like some other constitutional rights, may not be

---

[5](...continued)
to the machines. The differences in their recollections are the type of differences in perception that the Fourth Circuit has held not to preclude summary judgment in cases involving police officers. See Anderson v. Russell, 247 F.3d 125 (4th Cir.)(officer perceived suspect to have a gun because of bulge which was really an eyeglasses case and officer's and witness's perception of the speed and position of suspects hands differed, but summary judgment was appropriate), cert. denied, 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001); Sigman v. Town of Chapel Hill, 161 F.3d 782 (4th Cir. 1998)(officers were entitled to summary judgment on excessive force claim where they shot a suspect who they perceived had a knife, but who other witnesses perceived not to have a knife).

-11-

vicariously asserted.'" Rakas v. Illinois, 439 U.S. 128, 133-134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978)(quoting Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)). The United States Supreme Court applied this rule in Rakas and found that passengers in vehicles do not have standing to contest searches of the vehicles merely because of their presence in the car. Instead, all of the surrounding circumstances must be looked at to determine whether the person asserting the right "has a legitimate expectation of privacy in the invaded place." Id. at 143, 99 S.Ct. at 430. The Court in Rakas found no legitimate expectation of privacy where the petitioners did not own or lease the car, were not driving it, and did not assert a possessory interest in a gun seized from under the passenger seat or ammunition seized from the locked gun box. Id. at 148-149, 99 S.Ct. at 433.

Here, there is no dispute in the record that the truck was owned by Manuel and was being driven by Adkins at the time of the stop. Therefore, plaintiff neither owned nor controlled the vehicle at the time it was stopped and searched. Likewise, he has not alleged any possible facts indicating that he would have had an expectation of privacy in the areas under or behind the seat in the truck and has not claimed a possessory interest in the bolt cutters or hand tools seized from those places. He has also not asserted facts to support an expectation of privacy in the spare tire located in the back of the truck or in the purse.

The only arguable assertion of any interest in any object or location in the truck made by plaintiff is a possessory interest in the $142.88 in change that was located in Adkins' purse. In his unsworn complaint, he states that defendant "illegally seize [sic] the Plaintiff and his property, United States currency in the amount of $142.88." However, in his sworn declaration opposing defendant's initial motion for summary judgment, he states only that "a brown leather pocketbook with over $142 in loose coins were found," and later that "Officer Clark then seized Ms Adkins [sic] purse which contained a substantial amount of change in quarters, dimes, nickels, and pennies . . . ." (Pl. Decl. ¶¶ 2, 22)[6] Therefore, his sworn statement, and the only actual **evidence** submitted by plaintiff on this point, makes no claim of ownership of the purse or the money in it. For this reason, the evidence introduced at summary judgment places him in the exact position of the petitioners in Rakas–asserting no interest in the car or its contents and having no standing to contest the search and seizure of the vehicle or its contents.

Even if plaintiff's unsworn statement in his complaint could somehow be seen as an adequate assertion of a possessory interest

---

[6]The change in the wording between his unsworn complaint and his sworn declaration may well be an intentional step caused by the legal jeopardy that could stem from admitting under oath that the money was his, as opposed to Adkins' or Manuel's. Such an admission could provide strong evidence of his guilt at his trial on the charges in state court given that he would be admitting to possessing large amounts of silver change and hiding it under the spare tire of a truck which contained burglary tools and which was stopped after being seen illegally parked near opened coin operated machines and in an area where other machines had just been robbed. This would hardly seem to help his cause in state court. However, his failure to provide evidence of rightful possession dooms his claim to the money in this Court.

in the $142.88, it would not aid his case. The Court in Rakas never stated that a possessory interest would automatically give standing for the assertion of Fourth Amendment rights and it certainly never stated that such an interest would give standing to contest a search. In a later case, the Supreme Court dealt with a scenario where a criminal defendant placed his illegal drugs in the purse of a female companion. The Court held that, while ownership of the drugs was one fact to be considered, ownership by itself did not provide standing. Rawlings v. Kentucky, 448 U.S. 98, 105-106, 100 S.Ct. 2556, 2561-2562, 65 L.Ed.2d 633 (1980). In finding that the petitioner in that case did not have standing, the Court observed that he had only known the owner of the purse a few days, that he had never used the purse for storage before, that he did not have any right to exclude persons from the purse, and that he took no reasonable precautions to maintain his privacy interest. Id. at 105, 100 S.Ct. at 2556.

Here, plaintiff has done nothing to show that he would have any privacy interest in Adkins' purse other than making some inference in his complaint that the change in it was his. He has failed to support this allegation with evidence, has not explained how or why his money was in the purse, has not shown that he had the right to exclude others from the purse, and has not described any steps he took to maintain a privacy interest in the purse. He has also not shown that he had a long or close relationship with Adkins. Moreover, Adkins' signed confession appears to indicate that he was more Manuel's friend than hers and, further, that the

three were pilfering coin machines, which explains the money in the purse. (Def. Supp. Aff. Ex. A) Overall, like the petitioner in Rawlings, plaintiff has failed to show that he had any expectation of privacy in the purse of a friend's girlfriend which was found, not in his possession, but under a spare tire in the bed of a truck that he did not own and was not driving. Therefore, he cannot contest the search of the truck or purse.

In addition to the stop and search, plaintiff also contests his arrest and search and the seizure of the $142.88 in change. However, all of these claims fail as well. The arrest of a person is proper where there is probable cause to believe that the arrestee has committed a crime. "Probable cause exists when the facts and circumstances known to the officer 'would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)(quoting United States v. Garcia, 848 F.2d 58, 59-60 (4th Cir., cert. denied, 488 U.S. 957, 109 S.Ct. 395, 102 L.Ed.2d 384 (1988)). Probable cause is to be assessed using "the totality of the circumstances." Id. It is more than a mere suspicion, but less than the evidence needed for a conviction. Id.

Certainly, defendant had more than a mere suspicion that plaintiff, Manuel, and Adkins were breaking into coin operated machines. The three were first spotted by defendant in a truck parked illegally in a fire lane beside drink machines which had been broken into previously and which had their hasps opened within the ten minutes previous. After stopping the truck, he discovered

that it contained bolt cutters, other tools, and a purse with $142.85 in silver change and just 3¢ in pennies. The change was hidden under the spare tire, rather than possessed directly by any of the persons in the truck. Finally, he learned that a number of coin operated machines in the area had been broken into that night. It would have been quite clear to any reasonable officer that some or all occupants in the truck were involved in stealing change from coin operated machines.

It is true that mere presence at the scene of a crime or association with someone committing a crime may not be enough to establish probable cause. Id. However, there is much more in this case. Plaintiff was present in a pickup truck where burglary tools and a large amount of coins were found. There were recent reports of vending machine thefts. This would create a reasonable suspicion that all three, including plaintiff, were participating or aiding in the thefts in some manner, even if only as a lookout. More importantly, plaintiff's own actions at the scene of the traffic stop were enough to bolster this suspicion. By all accounts, he was quiet and caused no trouble when the stop was first made. However, also by his own admission, when he heard defendant use his radio to ask other officers to check and see if any coin operated machines had been broken into, he began cursing and shouting at defendant and the other officers and threatening to sue them. These actions are consistent with those of a person who remained quiet hoping that the traffic stop would be quickly over, but then tried to bully or bluff his way out of a situation when he

realized that he was about to be caught for more serious offenses. The sudden and dramatic change in his behavior upon defendant making an otherwise innocuous request for assistance from fellow officers is quite telling and erases any lingering doubts that probable cause existed to arrest plaintiff as a participant in breaking into coin operated machines.[7]

Just as plaintiff's arrest was proper, the search of his person and seizure of the change in Adkins' purse was also proper. When making an arrest, officers are allowed to conduct a reasonable search of the arrestee in order to find and remove weapons or evidence, such as the homemade key. New York v. Belton, 453 U.S. 454, 461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981)(citing United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973)). As for the money, it constitutes evidence of a crime and was subject to seizure on that basis. Adkins' confession provides evidence that the large and unusual amount of change came from pilfering coin machines. The Court has already noted that plaintiff has not produced any evidence, as opposed to a mere allegation, of legitimate ownership of the money and the evidence that he has produced shows only that it was located in Adkins' purse in someone else's truck--a fact inconsistent with his legitimate ownership of the money. He has not shown that he has standing to challenge its seizure. This claim, like the others,

---

[7] Although probable cause to arrest plaintiff clearly existed independent of the previously discussed doctrine of qualified immunity, the application of this doctrine provides a further basis for granting defendant's motion for summary judgment.

fails.  Defendant's motion for summary judgment should be granted in its entirety.[8]

**IT IS THEREFORE ORDERED** that defendant's motion to strike plaintiff's surreply (docket no. 63) and defendant's original motion for summary judgment (docket no. 33) are denied for being moot.

**IT IS RECOMMENDED** that defendant's renewed motion for summary judgment (docket no. 52) be granted and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

February 15, 2006

---

[8] There is also an additional motion to be decided.  Plaintiff filed a surreply to defendant's reply in support of the motion for summary judgment. Defendant has moved to strike it.  However, the recommendation that the motion for summary judgment be granted moots the motion to strike and it will be denied.

-18-